**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | **Docket No. 4:06-CR-062-01-HLM** |
| | ) | |
| MOHAMED SHORBAGI | ) | |
| | ) | |

**SENTENCING MEMORANDUM**

Defendant Mohamed Shorbagi, by and through undersigned counsel, hereby provides the Court the following sentencing memorandum, identifying mitigating factors in defendant's case, as well as recognized bases for a downward departure from the guideline sentence. Additionally, the defendant seeks the Court's application of the criteria contained in 18 USC § 3553 in imposing a reasonable sentence given the totality of the pertinent facts and circumstances of this case.

**DEPARTURE ISSUES**

Separate and apart from the departure considerations articulated in defendant's objections to the PSR, the following are potential departures that individually and collectively justify the imposition of a sentence below the otherwise, guideline sentence.

**I.**

**ABERRANT BEHAVIOR**

Section 5K2.20 of the Guidelines, states in pertinent part:

(a)     IN GENERAL – Except where a defendant is convicted of an offense involving a minor victim under section 1201, an offense under section 1591, or an offense under chapter 71.109A, 110, or 117, or title 18, United States Code, a downward departure may be warranted in an exceptional case if (1) the defendant's criminal conduct meets the requirements of subsection (b); and (2) the departure is not prohibited under subsection (c).

1

(b)     REQUIREMENTS – The court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life.

There is no absolute requirement that the criminal conduct represent a single act that was spontaneous and thoughtless.  The court should contrast and compare the offense conduct with that the defendant did and didn't do with his life outside of this conduct.

Mr. Shorbagi, despite significant odds and obstacles, attained an advanced education, maintained gainful employment, raised a family and has been a productive member of his community.  His offense was the result of his strong ties and feelings for his family members and friends caught-up in the financial and political struggle of the Middle-East conflict.  He turned a blind eye to the prohibitions of the law which precluded the financial support of Hamas and similar organizations.  His actions were motivated by the perceived suffering and financial needs of the people he was trying to assist.  The true measure of the man is demonstrated in his commitment and efforts in fostering interfaith dialogue and understanding in the Rome community.  The various letters from citizens of the Rome, Georgia area bear witness to this fact.

The commentary to this section directs a court to applicable circumstances to consider in determining a defendant's eligibility for this departure:

Other Circumstances to Consider – In determining whether the court should depart under this policy statement, the court may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense.

These circumstances, as applied to Mr. Shorbagi, weigh heavily in his favor.  The tragic events of 9/11 were a turning point in Mr. Shorbagi's world view and his attitudes

2

about himself and his relationship to his community.   Since confronted by the government as to his past activities, Mr. Shorbagi has indeed attempted to mitigate the effects of his offense by accepting responsibility and cooperating with the government in other cases.

Mr. Shorbagi and the facts of his case qualify for the court's application of a §5K2.20 departure in formulating his sentence.

## II.

## § 5K2.11 LESSER HARM

This section states:

> Sometimes, a defendant may commit a crime in order to avoid a perceived greater harm.  In such instances, a reduced sentence may be appropriate, provided that the circumstances significantly diminish society's interest in punishing the conduct, for example, in the case of a mercy killing.  Where the interest in punishment or deterrence is not reduced, a reduction in sentence is not warranted. For example, providing defense secrets to a hostile power should receive no lesser punishment simply because the defendant believed that the government's polices were misdirected.

> In other instances, conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue.  For example, where a war veteran possessed a machine gun or grenade as a trophy, or a school teacher possessed controlled substances for display in a drug education program, a reduced sentence might be warranted.

The defendant's purpose in violating the law by providing firearms support to Hamas was not to further the violence which is the object of the prohibition in the law. Rather, his violation was motivated by the sincere desire to mitigate the financial suffering of the Palestinian people.  While recognizing this aid could be diverted to the cause of evil, he was willing to incur the risk in the effort to provide humanitarian aid. There is no evidence linking any of his efforts as aid to any acts of violence.  This departure section is clearly applicable to Mr. Shorbagi's offense conduct.

**III.**

**DEPARTURE BASED ON DEFENDANT'S ENGAGEMENT IN EXCEPTIONAL**

**CHARITABLE AND COMMUNITY ACTIVITIES AND GOOD WORKS**

Although somewhat related to aberrant behavior, a separate and distinct basis for departure consideration lies in the established history of community service by this defendant.  This service was not the result of any post-arrest conversion.  The facts show a commitment and a concerted effort to improve interfaith relations and understanding, long before Mr. Shorbagi's arrest.  His actions were selfless and commendable.  There is ample case authority for application of this type of departure.

> **U.S. v. Cooper**, 394 F.3d 172 (3rd Cir. 2005) (in securities fraud and tax evasion case, with sentence range of 14-21 months, four-level downward sentencing **departure** for "**good works**" and sentence of probation was warranted for defendant's "exceptional" good works who did not simply donate money to charity but also organized and ran youth football team in depressed area, mentored its members, and helped several members attend better high schools or go to college, which qualified as exceptional because they entail "hands on personal sacrifices which have a dramatic and positive impact on the lives of others").

> **U.S. v. Serafini**, 233 F.3d 758 (3d Cir. 2000) (community service and charitable works performed by defendant, a state legislator convicted of perjury in a federal grand jury investigation, were sufficiently "extraordinary and exceptional" to justify three-;eve; downward departure for community and charitable activities; e.g., providing a $300,000 guarantee for medical treatment of a terminally ill patient and mentoring a seriously injured college student, and showed generosity of time as well as money); **U.S. v. Woods**, 159 F.3d 1132 (8th Cir. 1998) (defendant's exceptional charitable efforts – bringing two troubled young women in her home, paying for them to attend private high school – and also assisting elderly friend to move from nursing home to apartment – justified one level departure); **U.S. v. Jones**, 158 F.3d 492 (10th Cir. 1998) (where defendant pled guilty to possession of a firearm by a prohibited person, the district court did not abuse its discretion in departing downward by three levels when, as one of eleven factors, it considered defendant's long history of community service even though under §§5H1.5 and 1.11 good works are not ordinarily relevant because here "very unusual"); **U.S. v. Crouse**, 145 F.3d 786 (6th Cir. 1998) (where D was chief executive officer of company found to have fraudulent distributed orange juice adulterated with sugar, and where judge departed

downward 13 levels to impose home confinement where guidelines were 30-37 months, court of appeals will defer to district court's decision that D's charitable contribution were outstanding and, together with other factors, justify departure, but extent was an abuse of discretion); **U.S. v. Rioux**, 97 F.3d 648, 663 (2d Cir. 1996) (affirming downward departure based on charitable fund-raising conduct as well as poor medical condition); **U.S. v. Canoy**, 38 F.3d 893 (7th Cir. 1994) (charitable and civic activities may, if exceptional, provide a basis for departure).

Mr. Shorbagi extensive ecumenical endeavors were motivated by the sincere and strong desire to make his community a better one.  His efforts were not orchestrated to provide cover or to shield him from punishment.   If his life to date, is viewed as a ledger, the credits far exceed the debits.  Mr. Shorbagi's situation is worthy of consideration for application of this type of departure.

## IV.

## EXTRAORDINARY FAMILY CIRCUMSTANCES

Mr. Shorbagi is married with five minor children.  His wife is educated but has not worked outside the home while raising the children.  The children were born in the United States and are U.S. citizens.  Neither Mr. Shorbagi nor his wife are U.S. citizens.  Although, as a part of the plea agreement, the prosecution has agreed to assist both to remain in the United States after completion of defendant's sentence, there are no promises or guarantees that the family will not be forced to return to Palestine at some future date.

Because of Mrs. Shorbagi's lack of work experience and primary responsibility for raising the five children, financial support of the family while defendant is incarcerated will be a significant problem.  The spectre of a large sum of restitution further aggravates the already frail financial situation of the family.  The prospect of

5

potentially having to decide what to do with the children should the parents be forced to

return to the Middle East is a dilemma that weighs heavily on the mind of the defendant.

The Guidelines addresses this issue setting criteria governing the court's

consideration of the impact incarceration has on a defendant's family.

§5H1.6.        Family Ties and Responsibilities (Policy Statement)

In sentencing a defendant convicted of an offense other than an offense described in the following paragraph, family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted.

In sentencing a defendant convicted of an offense involving a minor victim under section 1201, an offense under section 1591, or an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code, family ties and responsibilities and community ties are not relevant in determining whether a sentence should be blow the applicable guideline range.

Family responsibilities that are complied with may be relevant to the determination of the amount of restitution or fine.

*Commentary*

*Application Note*:

1.      *Circumstances to Consider* –

(A)      *In General* – *In determining whether a departure is warranted under this policy statement, the court shall consider the following non-exhaustive list of circumstances:*

(i)      *The seriousness of the offense.*

(ii)      *The involvement in the offense, if any, of members of the defendant's family.*

(iii)      *The danger, if any, to members of the defendant's family as a result of the offense.*

(B)      *Departures Based on Loss of Caretaking or Financial Support* – *A departure under this policy statement based on the loss of caretaking or financial support of the defendant's family requires, in addition to the court's consideration of the non-exhaustive list of circumstances in subdivision (A), the presence of the following circumstances:*

6

> (i)    *The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.*
>
> (ii)   *The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.*
>
> (iii)  *The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.*
>
> (iv)   *The departure effectively will address the loss of caretaking or financial support.*

Discouraged factors are not ordinarily relevant but may be relied upon as bases for departure in exceptional cases, such as where the factor is present to an exceptional degree, or in a way that makes the case different from an ordinary case where the factor is present. While it is clear that the commission at least considered family circumstances, and the "ordinary" family circumstances are normally discouraged factors for departure, all the circuits have recognized that the presence of family circumstances to an unusual, special or extraordinary degree can serve to remove a case from the heartland. Other than the fact that the Commission was aware, in formulating the Guidelines, that incarceration may undermine family responsibilities, it remains unclear what the Commission believed to be ordinary consequences of incarceration upon a family.

7

The United States Sentencing Guidelines do not require a judge to leave compassion and common sense at the door to the courtroom.

**United States v. Johnson**, 964 F.2d 124, 125 (2d Cir. 1992).  U.S.S.G. §5H1.6 is a policy statement which provides that family ties and responsibilities are not "ordinarily relevant" in determining a sentence outside the applicable range.  Id. At 126.  Courts have held that such policy statements are merely "advisory" and cannot be viewed as the equivalent of the guidelines themselves.  Id. At 127.  Courts have usually followed the policy statement and have consistently held that ordinary family responsibilities do not warrant departure.  However, extraordinary circumstances, by their very nature, have not been adequately considered by the guidelines.  See id.  The Commission's own words reflect that same is true.  The Commission was careful to use the language not "ordinarily" relevant.  Thus, the policy statement is "soft," and in no way implies that family circumstances are never to be taken into account.  See id. At 128-129.  In fact, as demonstrated in the numerous cases cited below, extraordinary family circumstances are widely accepted as a valid reason for departure.  Id. At 129.

Courts throughout the country have recognized that family responsibilities can be present to an extraordinary degree, warranting a downward departure.  See **United States v. Ekhator**, 17 F.3d 53 (2d Cir. 1994) (remanded for re-sentencing where district court unaware that it had authority to sue sponte depart downward for extraordinary family circumstances, including parental responsibilities); **United States v. Canoy**, 38 F.3d 893 (7th Cir. 1994) (reversed for resentencing because a "district court may depart from an applicable guideline range once it finds that a defendant's family ties and responsibilities or community ties are so unusual they may be characterized as extraordinary"); **United States v. Haversat**, 22 F.3d 790 (8th Cir. 1994) (defendant's care for his mentally ill wife

8

was exceptional family circumstance rendering case appropriate for downward departure); **United States v. Gaskill**, 991 F.2d 82 (3rd Cir. 1993) (downward departure warranted to allow defendant to care for mentally ill wife); **United States v. Sclamo**, 997 F.2d 970 (1st Cir. 1993) (defendant's care and support for stepson who had ADHD and other difficulties warranted downward departure); **United States v. Rivera**, 994 F.2d 942 (1st Cir. 1993) (single mother of three young children, living solely on welfare with no criminal history, may be entitled to downward departure on remand); **United States v. Johnson**, 964 F.2d 124 (2d Cir. 1992) (affirming ten level downward departure for extraordinary parental responsibilities of single mother raising the six year-old daughter of her own 21 year-old institutionalized daughter, as well as her son and his two children, as well as her own five month-old); **United States v. Alba**, 933 F.2d 1117 (2d Cir. 1991) (defendant who lived with his wife of twelve years, two young daughters, his wheelchair bound, disabled father, and his paternal grandmother, providing financial and economic support for all, presented sufficient circumstances to affirm a downward departure for extraordinary family responsibility); **United States v. Gonzalez**, 2 Fed. Sent. R.81 (S.D.N.Y. 1989) (Downward departure warranted for parental responsibility where father of defendant's three young children is a co-defendant who will be serving a substantial prison sentence).

In **Johnson**, the district court had departed 13 levels (ten levels for family responsibilities), from Level 23 to Level 10, in order to sentence the defendant to home confinement rather than a term of imprisonment.  Significantly, the court found that Johnson, as a single parent caring for her own children and her grandchildren, faced more than the responsibilities of an ordinary parent:

> The defendant is a single mother . . Her [institutionalized] daughter, age 21, is . . the mother of a six year old child who currently resides with the defendant. Also residing with the defendant is her son Lamont and two children aged six and five, as well as her youngest child who is five months old. The father of this child is unemployed and reside in Queens, New York.

Id. At 126.

The **Johnson** court noted that the facts of Johnson were much more "extraordinary" than those in **United States v. Alba**, 933 F. 2d 1117 (2d Cir. 1991), where the Second Circuit upheld a downward departure for defendant Gonzalez. In **Alba**, the court found that the record "amply supports the conclusion that his family circumstances were extraordinary." Id. At 1122. The "extraordinary" circumstances noted in **Alba**, were as follows:

> Appellee has been married for 12 years. He, his wife and their two daughters, aged four and 11, live with his disabled father – who depends on Gonzalez to help him get in and out of his wheelchair – and his paternal grandmother. He had long-standing employment at the time of the events which gave rise to this case. He worked two jobs to maintain his family's economic well-being, and was aptly described as a man who works hard to provide for his family. Clearly his is a close-knit family whose stability depends on Gonzalez' continued presence.

Id. At 1122.

In **United States v. Haversat**, 22 F.3d 790, the Eighth Circuit found "exceptional" that the defendant's mentally ill wife "would not do well if separated from the aid of her spouse and . . . would have grave clinical concerns that her medical management could be safely continued without the ongoing presence of her spouse." Id. At 797. Similarly, in **United States v. Gaskill**, 991 F. 2d 82, the Third Circuit found that the district court had erred in failing to recognize its authority to depart where the defendant's mentally ill wife required close supervision and the risk to the wife's health was great if the defendant were to be imprisoned. Id. At 86. The **Gaskill** court noted:

It is important, too, to realize that departures are an important part of the sentencing process because they offer the opportunity to ameliorate, at least in some aspects, the rigidity of the guidelines themselves.

Id.

The First Circuit, in **United States v. Sclamo**, 997 F.2d 970, noted the extraordinary family responsibility of a defendant who had taken in his stepson, who despite his ADHD and other problems, was showing dramatic improvement in the defendant's care.

Finally, the district court in **United States v. Gonzalez**, **supra**, noted that the fact that the father of the defendant's children was a co-defendant and was receiving a lengthy prison sentence, in addition to her responsibilities to her three boys, ages 11, 6 and 4, was a circumstance not adequately taken into account by the guidelines.

The difficult task of discerning the dividing line between "ordinary" and "extraordinary" family circumstances is a fact-intensive inquiry, focusing on what family circumstances are more exceptional than those in the heartland cases.  It is difficult, if not impossible, to apply precise analytical criteria and objective standards.  As mightily as courts may attempt to avoid the conclusion, one must recognize that to a large degree, the ultimate decision in any given case is in the distillation of various facts and considerations to arrive at what is a fair and just outcome at a gut level.

The Second Circuit, in its decision in **United States v. Gallante**, 111 F.3d 1029 (2d Cir. 1997), best captured this point, providing further insight in addressing this nebulous standard.

"What is exceptional is-like the beauty of Botticelli's "Venus Rising From the Sea" a subjective question because the overall conclusion is one resting in the eye of the

11

beholder.  Because well over 90 percent of the Guidelines cases are not appealed, district courts – which see so many more – have an institutional advantage over appellate courts in comparing one sentencing case to another.  Hence, the sentencing court serves as the ':eye of the comparer' because it is in the best position to make comparisons and decide what combinations of circumstances take a case out of the ordinary and make it exceptional.

. . . The government's arguments overestimate our willingness to second-guess the sentencing court's fact-intensive determination.  Prior to the advent of the Guidelines, the Supreme Court taught reviewing courts to 'grant substantial deference to the . . . discretion that trial courts possess in sentencing convicted criminals.'. . .  That is to say, we may not simply use our discretion to displace the discretion of the trial court.  We are generally obligated to defer to a sentence imposed in district court, in light of that court's special competence regarding the exceptional circumstances present in a sentencing case.  Such remains the rule today."  *See Koon*, 116 S.Ct. At 2046-47. (Galante 111 F.3d at 1034-35).

It is axiomatic that a certain level of hardship befalls young children when a parent is incarcerated.  What distinguishes Mohamed Shorbagi's plight is the potential danger to him and his family resulting from his cooperative efforts on behalf of the government.  As outlined by the government in the motion for downward departure, Mr. Shorbagi's cooperation has and will for the foreseeable future, subject him and his family to potential retaliation by segments of the Palestinian community that take umbrage with his rejection of violence as a means of obtaining political progress in the Middle East.

**V.**

## THE COMBINATION OF EXTRAORDINARY FACTORS WARRANT A

## DOWNWARD DEPARTURE

If this court determines that none of the grounds submitted above form a valid

basis for downward departure, this court should, nevertheless, consider whether any

combination of factors mentioned above would authorize a downward departure.

The commentary to § 5K2.0 states:

> The Commission does not foreclose the possibility of an extraordinary
> case that, **because of a combination of such characteristics or
> circumstances**, differs significantly from the "heartland" cases covered by
> the guidelines in a way that is important to the statutory purposes of
> sentencing, even though none of the characteristics or circumstances
> individually distinguishes the case. (emphasis added)

The Supreme Court found that a district court is justified in departing downward

from the guidelines based upon a combination of factors taken together, although none of

the factors would have been sufficient standing alone. **Koon v. United States**, 518 U.S.

at 89-90, 109-114, 116 S.Ct at 2042, 2051-2054 (remanded for resentencing by district

court after considering whether to base downward departure on two valid factors, neither

of which justified a downward departure standing alone).

Courts have uniformly held that a combination of factors may warrant a

departure, even where none of the factors would alone support same. See **United States

v. Kalb**, 105 F.3d 426 (8th Cir. 1997) (citing **Koon** "sentencing court must then analyze

for the proposition that the potential departure factors, singly and in combination . . .");

see also **United States v. Jones**, 158 F.3d 492 (10th Cir. 1998) (affirming departure based

on combination of factors); **United States v. Coleman**, 188 F.3d 354, 360 (6th Cir. 1999)

(en banc) (the Tenth Circuit determined that a downward departure may hinge on an

13

aggregation of factors each of which might be in itself insufficient to justify a departure); see also **United States v. Rioux**, 97 F.3d 648 (2d Cir. 1996); **United States v. v. Fletcher**, 15 F.3d 553 (6th Cir. 1994).

If the court should find that any individual factor addressed above does not warrant a downward departure, the combination of these factors together justify a downward departure as they take the case outside of the "heartland."

## VI.

### POST BOOKER – REASONABLE SENTENCE

The United States Supreme Court's holding in **Booker** held, in sum, that the Guidelines were no longer mandatory but were to continue to be applied in arriving at an appropriate sentence.

The Eleventh Circuit, in applying this holding, concluded that though the Guidelines are only advisory, the court will still undertake a careful review of the Guideline calculations.

> Although under *Booker*, the Sentencing Guidelines are an advisory rather than a mandatory regime, the district court remains obliged to "consult" and "take into account" the Guidelines in sentencing. . . In other words, as was the case before *Booker*, the district court. . . must calculate the Guidelines range accurately,  A misinterpretation of the Guidelines by a district court "effectively means that [the district court] has not properly consulted the Guidelines. . . After it has made this calculation, the district court may impose a more severe or more lenient sentence as long as the sentence is reasonable. . ." **United States v. Crawford**, 407 F.3d 1174, 1178-79 (11th Cir. 2005)

Once arriving at a Guideline sentence, including the consideration of any appropriate "departure" issues, the court can deviate from the Guidelines in order to achieve a reasonable sentence.  In determining what constitutes a "reasonable sentence",

the court is to weigh and consider the various other factors enumerated in 18 U.S.C. §

3553 (A)(1), (3)-(7).

> Those sections require, *inter alia*, that the sentence reflect:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need to protect the public; the need for deterrence; the need to provide the defendant with needed educational or vocational training or medical care; the kinds of sentences available; the need to avoid unwarranted disparity among defendants with similar records and similar crimes and the need to provide restitution to any victims of the offense.

The two factors that start out as being the most pertinent in the determination of a

"reasonable sentence" in Mr. Shorbagi's case is the need to protect the public and the

need for deterrence.

There is nothing in the PSR to suggest Mr. Shorbagi poses any danger to the

community.  Rather, the testaments provided by various citizens as to Mr. Shorbagi's

ecumenical efforts, belies any contention that his past conduct in supporting Hamas is

prologue to future dangers to the community.

As to deterrence, Mr. Shorbagi stands before this court as a chastened and

humbled man, desperate to ameliorate his past transgressions, and provide for and protect

his family going forward.  Prior to any legal representation and on his own, he accepted

responsibility and began cooperating with the government.  He plead guilty, even though

the offense dictated by the government seemed unduly harsh and overstated.  He has

maintained his trust in the system and in this court, confident that wisdom and justice will

prevail and not mere labels and emotion.  Any incarceration, of any duration, will have a

dramatic impact on this individual, his family and his community.  I ask the court be

mindful of such when determining what is reasonable.

15

Respectfully submitted,


*/s/ Michael J. Trost*
Michael J. Trost
Georgia Bar No. 716685
Attorney for Mohamed Shorbagi

1800 Peachtree Street
Suite 300
Atlanta, Georgia 30309
(404) 352-9300

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **:** | |
| | **:** | |
| **v.** | **:** | **INFORMATION** |
| | **:** | **NO. 4:06-CR-062-01-HLM** |
| **MOHAMED SHORBAGI,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the following Sentencing Memorandum upon counsel by United States mail and by facsimile addressed as follows:

Kenneth Jeffers
United States Probation Office
900 United States Courthouse
75 Spring Street
Atlanta, Georgia 30303

Kim Dammers
Assistant United States Attorney
600 United States Courthouse
75 Spring Street
Atlanta, Georgia 30303

Mohamed Shorbagi

This the 26th day of February, 2007.

Respectfully submitted,

*/s/ Michael J. Trost*
Michael J. Trost
Georgia Bar No. 716685
Attorney for Mohamed Shorbagi

1800 Peachtree Street
Suite 300
Atlanta, Georgia 30303
(404) 352-9300